UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-00057-MR

| ANTWAIN LAMAR DENNIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| LESTER TORRES, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on a Motion to Dismiss by Defendants Torres, Caban, Hansley, and Goins, [Doc. 30], and Plaintiff's "Motion to Amend Exusted Remadies," [Doc. 37 (errors uncorrected)], which the Court construes as Plaintiff's Response to Defendants' Motion to Dismiss.[1]

## I. BACKGROUND

Pro se Plaintiff Antwain Lamar Dennis ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. On May 13, 2022, he

---

[1] In his response, Plaintiff also makes an improper motion to compel discovery, [see Doc. 37 at 11], which the Court will deny as premature and improper. The discovery period does not begin until the Court enters the Pretrial Order and Case Management Plan. Discovery requests should not be filed with the Court in any event.

filed this action pursuant to 42 U.S.C. § 1983 against Defendants Lester Torres, FNU Cook, Giavanni Caban, Christopher Hansley, and Luis Velasco, all identified as Correctional Officers at Alexander; and Defendants Whatt White and Dustin Goins, both identified as Sergeants at Alexander; all in their individual and official capacities. [Doc. 1 at 2-3; see Doc. 21 at 3]. Plaintiff's individual capacity First Amendment retaliation, Eighth Amendment excessive force, and Fourteenth Amendment equal protection claims against Defendants Goins, Torres, Hansley, Caban, White, and Velasco survived initial review. [Doc. 9 at 13; Doc. 25 at n.1, 8]. Defendant Cook and Plaintiff's official capacity claims were dismissed. [Doc. 9 at 3].

Plaintiff alleged, in pertinent part, as follows. On the morning of June 19, 2021, Plaintiff attempted to report a PREA violation against Defendant Torres. The report was not taken seriously. "The sergeant" said derogatory things about Plaintiff's mother and grandmother and the "CO's [and] sergeants" called Plaintiff a "nigger" and put "sperm" in Plaintiff's food. Plaintiff "lost it" and tried to kill himself. Plaintiff was placed in a suicide watch cell and put in full restraints for eight hours. [Doc. 1 at 5]. During this time, Plaintiff was denied food. He fell asleep for three hours and was awakened "by these officers, sergeants beating [him] up, punching [his face] 8 times," and punching his chest, stomach, ribs, and legs. [Id. at 4]. "They" told

2

Plaintiff this is "what they do to people accused off a B1 offence, not to be trying to tell their boss about [Plaintiff's] trays with sperm in it" and to "be a good nigger" and eat the food. [Id. at 5 (errors uncorrected)]. Then, in October or November 2021, after Plaintiff's mother died, he was assaulted, and he attempted suicide and was sent to an outside hospital. During transport to the outside hospital, Defendant Velasco kept shocking Plaintiff with a taser and "beat [Plaintiff] up," even though Plaintiff was not resisting. [Id. at 5].

In his Complaint, Plaintiff alleged that he has filed approximately 30 grievances about the alleged conduct, including complaints about unnecessary use of force by staff and Defendants Torres, Goins, Hansley, Caban, and Velasco and about Defendant Torres harassing Plaintiff and adulterating his food. [Doc. 1 at 8]. Plaintiff also alleged that he exhausted his administrative remedies, appealed "to Raleigh," and wrote the Raleigh Grievance Board, sending them grievances about these officers. [Id.]. Plaintiff alleged that "nothing happen[ed]" in response to his grievances, other than a two-month reprieve from harassment by Defendant Torres. [Id. at 7].

A few weeks after filing his Complaint, Plaintiff moved for an extension of time to exhaust his administrative remedies. [Doc. 8]. In the motion,

3

Plaintiff stated that he had exhausted his administrative remedies, but his copies were thrown away by prison staff and he needed additional time to comply with the Clerk's Order requiring that he demonstrate exhaustion of his administrative remedies. [Id.]. Plaintiff submitted his verified Prisoner Administrative Remedy Statement and attested under penalty of perjury that he exhausted his administrative remedies. [Doc. 7]. Plaintiff stated that he "put in several grievances on these incidents on June 23, 2021 because all [his] property was [taken] away from [him] for 3 days starting June 19, 2021." [Doc. 7-1 at 1]. Plaintiff claimed that prison staff threw away his grievance forms out of retaliation when he was transferred to the hospital at Central Prison. [Id.]. Plaintiff explained as follows:

> I put in several greviances on these incidents on June 23, 2021 because all my property was tooking away from me for 3 days from starting June 19, 2021, I have filed several greviance's on these complaints, The CO's that are involved them, their family's, buddy's keep throwing away all my greviance's, I gave grevince's to Mrs Parker and Mrs Jhonson personally, it was scaned  She told me but can't remember because I was put on suicide watch, I wasn't in my right mind, I keep thinking about what happen to me, at CP, at Alexander, June 19, 2021 and knew the sergeants, CO's that was involved June 19, 2021 cell A5 6 AM to 6 pm  Some of them got permoted and everytime I sumbment a new grievance it get thrown away, I get retaliated on, I fear for my rights in Alexander CI  And when I was sent to the Hospital when I came back all my property was thrown away by staff  They retaliated on me because

4

> I put greviances on them, I wrote Raleigh greviance bord, sent them a greviance and comlaint on torezz, some staff I put prea's on, preliminary injunction on Oct 31, 2021 and I sent a grevence, several, I told Raleigh greviane board that staff at Alexander have been throwing away some of my grievances….

[Id. at 1-2 (errors uncorrected)]. The Court denied Plaintiff's motion for an extension of time as moot, noting that Plaintiff "ha[d] sufficiently satisfied the Court's initial requirement that he demonstrate exhaustion." [Doc. 9 at 12].

On August 26, 2022, Defendants Goins, Hansley, Torres, and Caban waived service.[2] [Doc. 19]. On October 25, 2022, these Defendants moved to dismiss this action with prejudice for Plaintiff's failure to exhaust his administrative remedies under the Prisoner Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) ("PLRA"). [Docs. 30, see Doc. 31]. On October 27, 2022, this Court entered an order, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendants' motion and cautioning Plaintiff that his failure to respond would likely result in Defendants being granted dismissal of Plaintiff's Complaint. [Doc. 33]. Plaintiff did not technically respond to the motion, but he did file a "motion to amend" his "exhausted remedies," which was, in substance, a

---

[2] Defendant White waived service on December 5, 2022. [Doc. 39]. His Answer is due February 3, 2023. [12/5/2022 Docket Entry]. Defendant Velasco remains unserved. [See Docs. 28, 34-36].

response to Defendants' motion. [See Doc. 37]. The Court, therefore, will construe it as a response.

The matter is now ripe for adjudication.

## II. DISCUSSION

The PLRA requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency

addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. Id. at 216. A prisoner, however, need only exhaust those remedies actually available to him. Ross v. Blake, 136 S.Ct. 1850, 1855-56 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 1858 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011).

The North Carolina Department of Public Safety (NCDPS) has established, in its Administrative Remedies Procedures ("ARP"), a three-step procedure governing submission and review of inmate grievances. Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). Inmates are required to exhaust

administrative remedies with the NCDPS in accordance with ARP.  Id.  An inmate does not exhaust his administrative remedies with the NCDPS until he completes all three steps.  Id.; Doc. 32-3 at ¶¶ 5, 8: Grande Dec.

In support of their motion to dismiss, Defendants provide copies of Plaintiff's three fully exhausted grievances submitted from January 1, 2021 and August 1, 2022, as provided by the Inmate Grievance Resolution Board ("IGRB") through Kimberly Grande, the Executive Director of the NCDPS IGRB.  [Doc. 32-3 at ¶ 9; Doc. 32-3 at 4-15; see Doc. 32-1 at ¶ 4: Dec. of Counsel].  See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic."); see also Doc. 32-3 at ¶¶ 9-10 (attesting to complete review of grievance records and authenticity of attached grievances).  Grande attests that these three grievances were the only ones "filed by [Plaintiff] and exhausted through Step 3" of the grievance process.  [Doc. 32-3 at ¶ 10 (emphasis in original)].  The first such grievance addressed participation in religious holidays.  [Doc. 32-3 at 4-7].  The second such grievance involved dietary issues.  [Id. at 8-11].  As such, neither related to matters at issue here.

8

Case 5:22-cv-00057-MR   Document 40   Filed 01/09/23   Page 8 of 11

Plaintiff submitted the third such grievance on November 2, 2021. In the grievance, he claimed to have suffered retaliation for submitting a PREA complaint on Defendant Torres. [Id. at 13]. Plaintiff purported to seek "a temporary restraining order preliminary injunction" against Defendant Torres and other officers and staff at Alexander. Plaintiff claimed that, on October 30, 2021, Defendant Torres assaulted Plaintiff by spraying his eyes, face, and mouth in retaliation for Plaintiff filing a PREA complaint against Torres. [Doc. 32-3 at 13]. Plaintiff claimed he was not resisting and was not a potential threat to anyone at the time of this assault by Torres. [Id.]. This grievance was exhausted through Step Three. [See id. at 12-15].

The moving Defendants argue that while this third grievance "makes passing reference" to an alleged use of force by Defendant Torres on October 30, 2021, it fails to meet PLRA requirements because Plaintiff seeks only a "temporary restraining order preliminary injunction." [Doc. 31 at 6-7]. Defendants also contend that it fails to satisfy exhaustion requirements because it mentions only Defendant Torres by name and not the other Defendants. [Id. at 7].

Although it is not entirely clear whether this third grievance relates to matters at issue in the Complaint, Defendants have nonetheless failed to meet their burden of proving the lack of exhaustion. See Bock, 549 U.S. at

9

211. Defendants provide copies of the three grievances that Plaintiff filed and that were actually exhausted through Step Three during the relevant time. Defendants, however, do not refute Plaintiff's showing that he attempted to file approximately 30 grievances relative to the alleged conduct; that he sought assistance from the IGRB in Raleigh, North Carolina, to affect such exhaustion; and that many of his attempted grievances were thrown away by staff and never processed. As such, Plaintiff has sufficiently asserted that, through no fault of his own, he was prevented from availing himself of otherwise available administrative remedies. See Moore, 517 F.3d at 725. Defendants have done nothing to defeat that assertion at this stage. As such, the Court will deny Defendants' motion to dismiss. See McClary v. Kalinski, No. 5:18-cv-00102-MR, 2019 WL 3956150, at *3 (W.D.N.C. Aug. 21, 2019) (denying defendant's motion to dismiss where plaintiff claimed that he attempted to file a grievance but that it "got ripped up" by a staff member).

### III. CONCLUSION

In sum, for the reasons stated herein, the Court will deny Defendants' motion to dismiss.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss [Doc. 30] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend [Doc. 37] is **DENIED** as moot and Plaintiff's Motion to Compel Discovery [Doc. 37 at 11] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Torres, Caban, Goins, and Hansley shall have 21 days from this Order to answer Plaintiff's Complaint.

**IT IS SO ORDERED**.

Signed: January 9, 2023

Martin Reidinger
Chief United States District Judge