UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-00057-MR

| ANTWAIN LAMAR DENNIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| LESTER TORRES, et al., | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's "Prayer for Relief" [Doc. 59] and "Motion for prayer of Judgement for Plaintiff respose" [Doc. 71 (errors uncorrected)] and Defendants' Motion for Summary Judgment [Doc. 82].

**I.    PROCEDURAL BACKGROUND**

Pro se Plaintiff Antwain Lamar Dennis ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Granville Correctional Institution in Butner, North Carolina.  He filed this action pursuant to 42 U.S.C. § 1983 against Defendants Lester Torres, FNU Cook, Whatt White, Giavanni Caban, Dustin Goins, Christopher Hansley, and Luis Velasco, all identified as officers at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina.  Plaintiff alleged that Defendants Goins, Torres,

Hansley, Caban, Velasco, and White used excessive force on him on June 19, 2021 in retaliation for Plaintiff's submission of a PREA[1] grievance against Defendant Torres and that Defendant Velasco "beat [Plaintiff] up" and "kept shocking [Plaintiff]" during Plaintiff's transport to an outside hospital after a suicide attempt in or around October 2021. [See Docs. 1, 9]. Plaintiff also alleged that he was repeatedly called a "n****r" and that the June 2021 beating was a "bias hate crime." [Doc. 1 at 4-5].

Plaintiff's Complaint survived initial review on his First Amendment retaliation, Eighth Amendment excessive force, and Fourteenth Amendment equal protection claims against Defendants Torres, White,[2] Caban, Goins, Hansley, and Velasco. [Doc. 9; Doc. 25 at n.1]. Plaintiff's remaining claims and Defendant Cook were dismissed for Plaintiff's failure to state a claim for relief.[3] [Id. at 13]. The Court entered a scheduling order setting the discovery

---

[1] PREA stands for the Prison Rape Elimination Act, 34 U.S.C. § 30301. It seeks to establish "zero tolerance" for the incidence of prison rape. The purpose of this Act is to protect inmates in correctional facilities from sexual abuse and sexual assault. Gadeson v. Reynolds, No. 2:08-3702-CMC-RSC, 2009 WL 4572872, at *3 (D.S.C. Dec. 4, 2009).

[2] Nathan Wyatt waived service for Defendant Whatt White [Doc. 39] and answered Plaintiff's Complaint [Doc. 48]. To the extent these are not the same people, Plaintiff has taken no action to correct this potential error or to otherwise effect service on Whatt White. The Court, therefore, will proceed with Nathan Wyatt as being the proper Defendant and notes that Plaintiff did not forecast any evidence against "Whatt White" or "Nathan Wyatt" in any event.

[3] The Court dismissed Plaintiff's official capacity claims, any claim "based on Defendants [allegedly] putting semen in Plaintiff's food" for Plaintiff's failure to identify which Defendant or Defendants were allegedly responsible, any claim based on alleged verbal

deadline as July 7, 2023. [Doc. 55]. More than two months after the expiration of this deadline, Plaintiff moved to compel Defendants to respond to Plaintiff's untimely discovery request. [See Docs. 70, 70-1]. The Court denied Plaintiff's motion and his subsequent improper attempt to compel a response to his untimely request.[4] [Docs. 73, 76, 78; see also Docs. 72, 69]. Plaintiff also filed the two pending motions, in which he sets out the monetary relief he seeks and asks the Court to enter judgment for him, to enjoin Defendants from retaliating against him, to award him monetary relief, and for a jury trial. [Docs. 71, 59].

On January 16, 2024, Defendants moved for summary judgment. [Doc. 82]. In support of their motion, Defendants submitted a memorandum, their own Affidavits, Plaintiff's Offender Information Sheet and Infraction Summary, North Carolina Department of Adult Corrections (NCDAC) Use of Force Policy, an Incident Report, and the Daily OIC Report for June 19, 2021. [Docs. 84, 84-1 to 84-10]. Defendants argue that they are entitled to

---

harassment, any claim based on Plaintiff's alleged placement in four-point restraints while under suicide watch, and any claim based on the alleged mishandling of Plaintiff's PREA grievance. [Doc. 9]. After improperly moving to amend his Complaint, Plaintiff never filed an Amended Complaint seeking to properly state claims on these grounds or a claim for relief against Defendant Cook. [See Docs. 16, 25 (denying Plaintiff's motion to amend his Complaint without prejudice)].

[4] Plaintiff sought among other things "camera footages from June 19, 2021 thru June 18, 2023" and specifically from June 19, 2021 Red unit A#5 cell 6 AM too 1:00pm." [Doc. 72 at 1].

3

summary judgment because there was no use of excessive force on June 19, 2021 or October 2, 2021, and because they are entitled to qualified immunity. [See Doc. 83].

On January 16, 2024, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court and ordering that Plaintiff must respond within 14 days of that Order. [Doc. 82]. On February 5, 2024, Plaintiff filed an unsigned response to Defendants' summary judgment motion, including his own declaration, and a motion for extension of time to file such response. [Docs. 86, 86-1, 87]. The Court granted Plaintiff's motion and deemed his response timely filed. [2/6/2024 Text Order]. In his response, Plaintiff asks the Court "to order Alexander to produce the camera footages on all cameras…." [Doc. 86 at 3]. Defendants notified the Court of their intent not to file a reply brief. [Doc. 88].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable

5

Case 5:22-cv-00057-MR   Document 89   Filed 03/18/24   Page 5 of 16

jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and construe all reasonable inferences and ambiguities against the movant and in favor of the nonmoving party. Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020); see Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). That is, "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citation and internal quotation marks omitted).

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.

Plaintiff is currently serving a 53-year sentence for First Degree Forcible Rape and First Degree Forcible Sex Offense. [Doc. 84-3]. He was incarcerated at Alexander at the relevant times. [See Doc. 86]. Since November 2019, Plaintiff has committed 101 prison infractions. [Doc. 84-4].

At the relevant times, Defendant Goins was a Correctional Sergeant in the Restrictive Housing Unit (RHU) at Alexander [Doc. 84-1 at ¶ 4: Goins Dec.], Defendant Hansley was a Correctional Officer in RHU at Alexander [Doc. 84-7 at ¶ 4: Hansley Dec.], Defendant Caban was a Correctional Officer at Alexander [Doc. 84-8 at ¶ 2: Caban Dec.], Defendant Torres was a Correctional Officer at Alexander [Doc. 84-9 at ¶ 2: Torres Dec.], Defendant Nathan Wyatt was assigned to RHU at Alexander [Doc. 84-5 at 1]; and Defendant Velasco was a Correctional Officer in the RHU at Alexander [Doc. 84-10 at ¶ 4: Velasco Dec.].

After being targeted by "homasexuls CO's and staff" and sexually harassed at Alexander, Plaintiff "stop[ped] going to showers around [Defendant Torres], certain officers" and "put preas" on Defendants Torres, Hansley, and Caban. [Doc. 86-1 at 2 (errors uncorrected): Plaintiff's Dec.]. "[T]hey kept giving [Plaintiff] stuff like extra food, … coffee, Honey buns, outside food if [Plaintiff] would masterbate on them." [Id. at 2 (errors uncorrected): Plaintiff's Dec.]. Plaintiff refused and told them to "stay away."

7

[Id.]. "They kept trying to intimidate [Plaintiff] every day, putting false reports on [him],… stealing money from [Plaintiff] on false write-ups," and said "prejudice things" to Plaintiff. [Id.].

On June 19, 2021, at approximately 12:00 p.m., Defendants Goins and Hansley were ordered by the Officer-in-Charge ("OIC") to assist in placing Plaintiff in four-point restraints because of his violent, unmanageable, and disruptive behavior that was causing a significant risk of harm to the Plaintiff. [Doc. 84-1 at ¶¶ 5, 21; Doc. 84-7 at ¶ 5; see Doc. 84-5 at 2]. At the time, Plaintiff was already in mechanical restraints, which had been placed on Plaintiff by the previous shift. [Doc. 84-7 at ¶ 5]. Plaintiff was placed in the four-point restraints solely to regain control of a situation and not to injure or otherwise harm the Plaintiff. [Doc. 84-1 at ¶ 21]. Other than assisting with Plaintiff's restraints, Defendants Goins and Hansley did not touch Plaintiff in any way. [Id. at ¶ 6; Doc. 84-7 at ¶ 6]. Defendants Caban and Torres had no contact with Plaintiff on June 19, 2021, [Doc. 84-8 at ¶ 4; Doc. 84-9 at ¶ 4], and Defendant Velasco was not involved in the placement of the four-point restraints on Plaintiff and did not touch him that day, [Doc. 84-10 at ¶ 6]. Defendant Nathan Wyatt missed work on June 19, 2021, and he was, therefore, not involved in the application of restraints or any other events on this day. [Doc. 84-5 at 1; see Doc. 84-1 at ¶ 27]. Plaintiff committed four

8

infractions that day, including profane language, threatening to harm or injure staff, lock tampering, and attempting a Class B offense. [Doc. 84-4 at 2].

The Defendants present the following forecasts of evidence to which Plaintiff presents no forecast in rebuttal, except as provided below. No Defendant tampered with Plaintiff's food or food tray or saw anyone tamper with Plaintiff's food or food tray in any way. [Doc. 84-1 at ¶¶ 10-11; Doc. 84-7 at ¶¶ 10-11; Doc. 84-8 at ¶¶ 8-9; Doc. 84-9 at ¶¶ 8-9; Doc. 84-10 at ¶ 10-11]. No Defendant retaliated against Plaintiff for filing a PREA grievance against Defendant Torres. [Id. at ¶ 13; Doc. 84-7 at ¶ 13; Doc. 84-8 at ¶ 11; Doc. 84-9 at ¶ 14; Doc. 84-10 at ¶ 13]. No Defendant has treated anyone, including Plaintiff, differently because of their race or ever called an offender a racist term.[5] [Id. at ¶ 17; Doc. 84-7 at ¶ 17; Doc. 84-8 at ¶ 15; Doc. 84-9 at ¶ 15; Doc. 84-10 at ¶ 17].

On October 2, 2021, at approximately 7:05 a.m., Defendant Caban witnessed Plaintiff attempt to swallow a battery. [Doc. 84-6 at 1]. Defendant Caban called for assistance and, once additional staff arrived, pepper spray was used to prevent Plaintiff from swallowing the battery. After a

---

[5] Plaintiff's forecast of evidence shows that, while he was housed at Alexander from 2021 to 2022, he was "treated different from other inmates, … oppress[ed], … called n****rs, [and] disrespect[ed]." [Doc. 86-1 at 1]. Plaintiff's forecast of evidence also shows, "The officer was calling [him] N****r Jews Sargent Goings." [Id. (errors uncorrected)]. Accordingly, at best, Plaintiff's forecast of evidence ambiguously suggests that Defendant Goins called him "N****r Jews."

decontamination shower, Plaintiff was placed on self-injurious behavior ("SIB") precautions. [Id.]. Plaintiff was transported to an outside hospital by Officers Dula and Delozier. [Id.]. They returned later that day without incident and Plaintiff was returned to his cell for SIB observation. [Id. at 1-2]. Defendant Velasco did not assist in transporting Plaintiff to the hospital and has never tased the Plaintiff. [Doc. 84-10 at ¶ 22].

## IV. DISCUSSION

### A. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017). "The elements of a retaliation claim are: (1) that the plaintiff engaged in protected activity; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that the adverse action was motivated, at least in part, by the plaintiff's protected conduct." Wade v. Ballard, No. 2:13-cv-12817, 2016 WL 3693597, at *4 (S.D.W. Va. June 16, 2016) (citing Mt. Healthy City School Dist. Bd. of Educ. V. Doyle, 429 U.S. 274 (1977)).

Plaintiff alleged in his Complaint that he was beaten on June 19, 2021, while in four-point restraints, in retaliation for having submitted a PREA

grievance against Defendant Torres. Plaintiff has presented no forecast of evidence, however, that he was beaten or otherwise subjected to any use of excessive force that day. Moreover, there is no forecast of evidence that any conduct by Defendants was in retaliation for Plaintiff's PREA grievance. At best, Plaintiff's forecast of evidence shows that he filed PREA grievances on Defendants Torres, Hansley, and Caban and that "they" tried to intimidate Plaintiff, put "false reports" on him, stole his money, and said "prejudice things" to him. The forecast of evidence, however, does present anything from which a reasonable jury could find a causal connection between a protected activity and these Defendants' conduct. Moreover, the forecast of evidence shows that, on June 19, 2021, Plaintiff was engaging in violent and disruptive behavior and that Defendants Goins and Hansley assisted in placing Plaintiff in four-point restraints to restore order. From this forecast of evidence, no reasonable jury could find that any conduct by Defendants was in retaliation for or motivated by Plaintiff's PREA grievance. There is, therefore, no genuine issue for trial on Plaintiffs First Amendment retaliation claim and the Court will grant his Motion for Summary Judgment on this ground.

## B. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "[I]n making and carryout decisions involving the use of force to restore order, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Whitley, 475 U.S. at 320. "[I]n these circumstances,

12

in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Williams, 77 F.3d at 761 (internal quotations and citation omitted).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

There is no forecast of evidence here showing that any Defendant used excessive force on Plaintiff. Again, the forecast of evidence shows that, on June 19, 2021, Defendants Goins and Hansley assisted in placing Plaintiff in four-point restraints to restore order. The forecast of evidence also shows that no other use of force occurred while Plaintiff was restrained or otherwise that day. Finally, the forecast of evidence also shows that Defendant Velasco did not transport Plaintiff to an outside hospital on October 2, 2021, and never tased the Plaintiff.

13

From this forecast of evidence, no reasonable juror could conclude that any Defendant used excessive force on Plaintiff in violation of the Eighth Amendment. As such, there is no genuine issue of material fact as to Plaintiff's excessive force claim, and it will be dismissed.

## C. Equal Protection

To establish an equal protection violation, Plaintiff must demonstrate that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Racial statements can serve as evidence of discriminatory intent. See Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1133 (4th Cir. 1988) (citation omitted). "Racial epithets, however, do not themselves implicate constitutional rights and cannot, on their own, form the basis of a constitutional claim." Harrison v. Prince William Cty Police Dept., 640 F.Supp.2d 688, 706 (E.D. Va. Feb. 10, 2009) (citation omitted).

Plaintiff's equal protection claim passed initial review on his allegations that the June 19, 2021 beating was a "bias hate crime" and that Defendants called him a "n****r." The forecast of evidence, however, does not show that such beating occurred and only suggests that Defendant Goins may have called him a "N****r Jew" on a single occasion. Even if Defendant Goins did

14

inexcusably call Plaintiff by this pejorative epithet, the forecast of evidence is nonetheless insufficient for a reasonable jury to find an equal protection violation. That is, racial slurs alone do not implicate constitutional rights. Harrison, 640 F.Supp.2d at 706.

As such, there is no genuine issue of material fact as to Plaintiff's equal protection claim, and it will be dismissed.

### D. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendants violated a constitutional right, Defendants are entitled to qualified immunity. As such, summary judgment for Defendants would also be proper on this ground. Since the Defendants are entitled to such summary judgment on issues of liability, Plaintiff's filings setting forth the relief he desires [Docs. 59, 71] are likewise denied.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 82] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions [Docs. 59, 71] are **DENIED**.

**IT IS SO ORDERED**.

Signed: March 18, 2024

Martin Reidinger
Chief United States District Judge